```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

James Fredderick Chamberlain

    v.                                    Civil No. 17-cv-520-JD
                                                   Opinion No. 2018 DNH 171

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration

## O R D E R

James Fredderick Chamberlain seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for social security disability benefits. Chamberlain contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinions in the record and inadequately assessed Chamberlain's mental impairments. The Acting Commissioner moves to affirm.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial

evidence.  § 405(g).  Substantial evidence is "more than a scintilla of evidence" but less than a preponderance.  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  The court must affirm the ALJ's findings, even if the record could support a different conclusion, as long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## Background

Chamberlain previously applied for social security benefits, and his application was denied in 2014.  He then filed a second application, alleging an onset date of January 14, 2014, when he was fifty-one years old.  His last insured date was December 31, 2014.

When he was working, Chamberlain was employed as an equipment operator and a janitor.  He states that he stopped working in 2009 and alleges impairments due to neck and back pain with sciatica, arthritis, Barrett's esophagus, depression, anxiety, migraine headaches, foot pain, and difficulty sleeping.  Chamberlain completed the eighth grade, was single, did not have children, and lived alone.

Medical records show that Chamberlain was treated at Concord Orthopedics for back pain beginning in 2008, although he also had a back injury in 1999. He sought medical care for depression in 2009 but declined medication and therapy at that time. He also received treatment for reflux disorder. Medical records through 2013 document back pain and treatment.

Chamberlain continued care at Willowbend Family Practice with Tracey Bottazzi, APRN. She noted in March of 2014 that Chamberlain had chronic pain in his neck but no new symptoms and that he did not take medication daily because of Barrett's esophagus. Nurse Bottazzi also noted that Chamberlain's depression was stable on Cymbalta.

In April of 2014, Nurse Bottazzi completed a Physical Residual Functional Capacity Questionnaire in which she noted her own diagnoses of Chamberlain's pain due to spinal issues, his treatment, and his limited functional capacity. Also in April of 2014, Chamberlain had consultative examinations done by Juliana Read, Ph.D., a psychologist, and Dr. Peter Loeser, an orthopedist. Non-examining state agency psychologist, Dr. Laura Landerman, and state agency physician, Dr. Burton Nault, also provided opinions about Chamberlain's functional capacity.

A hearing was held before an ALJ on May 17, 2016. Chamberlain was represented during the process before the ALJ by

a non-attorney representative.[1] During the hearing, Dr. John Hackman, a neurological surgeon, and Dr. Delano Bolter, a psychiatrist, testified by telephone. A vocational expert also testified.

The ALJ issued her decision on June 13, 2016, concluding that Chamberlain was not disabled. In support, the ALJ found that Chamberlain had severe impairments due to degenerative changes in the cervical and lumbar spine and degenerative joint disease in his shoulders. The ALJ found that Chamberlain retained the capacity to do light work without climbing or crawling and with only occasional reaching. She found that Chamberlain could do uncomplicated tasks and could maintain concentration, persistence, and pace for two-hour blocks through an eight-hour work day. Based on that functional capacity, the ALJ found that Chamberlain could not return to his past work but could do work identified by the vocational expert.

Chamberlain appealed that decision to the Appeals Council, and his representative submitted new evidence in support of the appeal. The Appeals Council denied his request for review and

---

[1] Chamberlain emphasizes that he had a non-attorney representative before the ALJ but does not explain what significance that circumstance has for purposes of judicial review. Cf. Torres-Pagan v. Berryhill, --- F.3d ---, 2018 WL 3805859, at *4-*5 (1st Cir. Aug. 10, 2018) (remanding for development of the record where claimant was proceeding pro se and was undergoing psychiatric treatment).

noted that the new evidence did not related to the period at issue for his benefits application.  The ALJ's decision then became the decision of the Acting Commissioner.

## Discussion

Chamberlain contends that the ALJ erred in relying on the opinions of the non-examining medical experts, a neurological surgeon and a psychiatrist, who testified at the hearing, and should instead have given greater weight to other opinions in the record.  Chamberlain also contends that the ALJ failed to adequately assess his mental impairments in combination with all of his impairments.  The Acting Commissioner moves to affirm, arguing that the ALJ properly assessed the medical opinion evidence and considered and assessed Chamberlain's mental impairments.

A.  Medical Opinion Evidence

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).
Acceptable medical sources include licensed physicians and

certain other licensed medical providers but not nurse practitioners. 20 C.F.R. § 1513(a); Arseneau v. Berryhill, 2018 WL 3854795, at *8 (D.N.H. Aug. 14, 2018). Opinions provided by non-acceptable sources may be considered, but only "'to show the severity of the [claimant's] impairment(s) and how it affects the [claimant's] ability to function.'" Ledoux v. Berryhill, 2018 WL 2932732, at *5 (D.N.H. June 12, 2018) (quoting SSR 06-3p, at *2).

Medical opinions are evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system. § 404.1527(c). An ALJ may rely on the opinions of state agency consultant medical sources based on the same factors used to evaluate other medical opinions. Ledoux, 2018 WL 2932732, at *4. If a consultant's opinion is not based on a complete record, however, it will not support the ALJ's functional capacity assessment when other evidence supports the claimant's limitations. Id.

1. Dr. Hackman

Dr. Hackman, a board certified neurological surgeon, testified by telephone at the hearing.[2]  Dr. Hackman stated that Chamberlain could lift twenty pounds occasionally and ten pounds frequently.  He testified that Chamberlain had no limitations in his ability to sit, stand, or walk.  He said that Chamberlain's spinal problems would not cause restrictions in reaching but did not give an opinion on whether Chamberlain's degenerative shoulder condition would limit his ability to reach, which he said was an issue for an orthopedist.  He also found no limitations in handling, fingering, or manipulative activities, and no limitations in postural activities other than climbing ladders or scaffolding.

The ALJ gave great weight to Dr. Hackman's opinion, noting that he was an impartial medical expert and a board certified neurosurgeon.  The ALJ also noted that Dr. Hackman had the complete medical record and the hearing testimony, that he had explained his assessment and cited evidence in support, and that he had discussed other opinions and why he did not find them supported by the record.  Chamberlain contends that assessment

---

[2] Chamberlain notes that there were technical difficulties during the hearing so that Dr. Hackman could not hear Chamberlain's testimony.  The ALJ summarized the testimony, and Chamberlain agreed with the summary.  It appears that the hearing issue was addressed when it arose, and Chamberlain does not show that Dr. Hackman missed any testimony.

7

was wrong because Dr. Hackman did not consider Chamberlain's complaints of pain and relied on only objective medical evidence.

Chamberlain cites no legal support for his theory that Dr. Hackman's opinion was invalid because he did not consider Chamberlain's complaints of pain and his mental health issues. To the extent he argues that Dr. Hackman should have credited the findings made by Dr. Loeser and Nurse Bottazzi, Dr. Hackman adequately explained why he did not rely on those opinions. Chamberlain also cites no authority to show that Dr. Hackman was required to provide opinions on areas outside the area of his medical expertise.

Chamberlain has not shown that the ALJ erred in relying on Dr. Hackman's opinion. That opinion provides substantial evidence to support the ALJ's residual functional capacity assessment.

2. Dr. Delano Bolter

Dr. Bolter, a psychiatrist, also testified at the hearing by telephone. Dr. Bolter noted other limitations shown in Chamberlain's records but found no psychological functional limitations beyond a mild degree. The ALJ gave Dr. Bolter's opinion great weight and did not find any psychological impairment to be severe. Although not entirely clear, it

8

appears that Chamberlain challenges that assessment because Dr. Read examined Chamberlain and provided a different opinion, and because Dr. Bolter focused on psychological impairments rather than Chamberlain's physical pain and the impact of his depression on his physical impairments.

The ALJ explained that he gave great weight to Dr. Bolter's opinion because he was an impartial medical expert and a psychiatrist and he had considered all of the medical records and Chamberlain's testimony. The ALJ noted Dr. Bolter's familiarity with the social security regulations. The ALJ also noted that Dr. Bolter explained his opinions and cited evidence in support. The ALJ explained that he gave less weight to the opinions of Dr. Read, an examining psychological consultant, because Dr. Bolter reviewed the entire record. Chamberlain has not shown error in that assessment.

3. <u>Other Opinions</u>

To the extent Chamberlain also argues that the ALJ erred in failing to give great weight or controlling weight to the opinions of Dr. Loeser, Dr. Read, Dr. Landerman, Nurse Bottazzi, Physical Therapist Shannon Gile, he has not shown that error occurred. The ALJ properly gave appropriate reasons for the weight given to those opinions. While Chamberlain correctly notes that those sources provided opinions that would support

9

additional limitations, Chamberlain has not shown that the ALJ was required to accept and give weight to the opinions. Chamberlain has not shown that the ALJ's assessments were done erroneously.

B. <u>Mental Impairments</u>

Chamberlain contends that despite Dr. Bolter's opinion the ALJ should have found severe mental impairments at Step Two and that the ALJ erred in failing to assess mental impairments at Steps Four and Five. Chamberlain, however, makes no developed argument that the severity assessment at Step Two was wrong, cites no standard, and focuses on the analysis at Steps Four and Five. Therefore, Chamberlain has not shown any error at Step Two.

In challenging the analysis at Steps Four and Five, Chamberlain argues that the ALJ did not consider the combined effect of his mental and physical impairments. He contends that the ALJ did not adequately consider his mental impairments at Steps Four and Five and did not consider their effect on the occupational base of work he could do. The Acting Commissioner acknowledges the requirement that the ALJ consider the combined effects of severe and nonsevere impairments and argues that the ALJ satisfied that requirement. Alternatively, the Acting

Commissioner argues that Chamberlain has not shown that any prejudice resulted from the ALJ's analysis.

In assessing a claimant's residual functional capacity, an ALJ must consider all of his impairments, even those that are not severe. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1126 (1st Cir. 1986). That is because impairments taken separately may not be disabling but when considered together they may significantly limit the ability to work. Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL374184, at *5 (July 2, 1996). The required consideration of the combined effect of impairments may be satisfied at any stage of the sequential analysis, and once considered, the ALJ need not provide a detailed separate discussion of the medical evidence. Tellier V. Acting Comm'r, U.S. Social Security Admin., 2018 DNH 143, 2018 WL 3370630, at *4 (D.N.H. July 10, 2018).

In this case, the ALJ properly considered all of Chamberlains impairments, including his mental impairments. The ALJ noted that Chamberlain had received treatment for symptoms of depression and anxiety and was diagnosed with a major depressive disorder and a mild adjustment disorder with anxiety. The ALJ relied on Dr. Bolter's opinion, however, that those

issues would have no more than a minimal effect on Chamberlain's ability to work.

The ALJ then reviewed other opinion evidence related to Chamberlain's mental impairments and found no severe limitations. The ALJ also stated that she considered all of Chamberlain's impairments, severe and nonsevere, including his "mental health related symptoms in conjunction with his ongoing pain symptoms," and found that those impairments limited Chamberlain's ability to maintain focus and concentration to the extent that he was restricted to uncomplicated tasks. Admin. Rec. at 32. The ALJ then included that limitation in her residual functional capacity assessment. Therefore, the ALJ met the requirement for considering Chamberlain's impairments in combination.[3]

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 11) is denied.

The Acting Commissioner's motion to affirm (document no. 16) is granted.

---

[3] Chamberlain contends that the restriction to uncomplicated tasks was intended to account for his lack of education. That is not what the ALJ explained in her decision.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Judge Joseph A. DiClerico, Jr.
United States District Judge

August 22, 2018

cc: Sarah E. Choi, Esq.
    Janine Gawryl, Esq.
    Robert J. Rabuck, Esq.